**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:

BODY DETAILS LLC, f/k/a                          Case No. 24-17571-MAM
  BODY DETAILS LLLP,                             Chapter 11

       Debtor-in-Possession,
_____/

### DEBTOR-IN-POSSESSION'S EMERGENCY MOTION FOR AUTHORIZATION TO ENTER INTO POST-PETITION FINANCING WITH TCP BODY SPACE LLC AND REQUEST FOR EMERGENCY HEARING

#### *EXIGENT CIRCUMSTANCES*

*The Debtor has an immediate need to obtain financing to permit the orderly continuation of the operation of its business. Without access to post-petition financing, the Debtor will be unable to meet its day-to-day obligations, including payroll. The Debtor needs to maintain basic operations while it explores its options through the bankruptcy. Therefore, the Debtor respectfully requests an emergency hearing on this matter.*

The Debtor, BODY DETAILS LLC, by and through its undersigned counsel, hereby files this *Emergency Motion for Authorization to Enter into Post-Petition Financing with TCP Body Space LLC and Request for Emergency Hearing* (the "Motion"), and in support thereof, states as follows:

#### BACKGROUND

1.     On July 26, 2024, the Debtor filed a voluntary petition pursuant to 11 U.S.C. Chapter 11 (DE 1).

2.     The Debtor has continued to operate its business and manage its property as a debtor in possession pursuant to Section 1184 of the Bankruptcy Code.

3.     As of the date hereof, no creditors' committee has been appointed in this case. In

addition, no trustee or examiner has been appointed.

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      The statutory predicates for the relief requested herein are Sections 363 and 364 of the Bankruptcy Code and Rules 2002, 4001, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Rules 4001-2, 4001-3, and 9013-1.

6.      The Debtor is a Delaware corporation, with its nerve-center based in Palm Beach, Florida and is a provider of laser cosmetic services (not a "health care business" for purposes of 11 U.S.C. §101(27A)).

7.      The Debtor holds substantial assets in the form of equipment and accounts receivable.

8.      The Debtor is currently operating with a negative cash flow.

## **RELIEF REQUESTED**

9.      The Debtor has an immediate need to obtain financing in order to maintain its operations and more importantly, fund payroll, so that it can move forward with evaluating claims, causes of actions and prepare a plan of reorganization.

10.     TCP Body Space LLC (hereafter "TCP"), has agreed to provide the Debtor with a post-petition line of credit in the aggregate principal amount of $250,000.00 (the "DIP Facility"). TCP will make $191,954.47 of the DIP Facility available to the Debtor upon entry of an interim order granting this Motion.

11.     In an abundance of caution, the Debtor discloses that TCP has an ownership interest in the Debtor.

## SECURED CREDITORS

12.     The Debtor has five (5) open UCC's of record in the Florida Secured Transaction Registry secured by the assets of the Debtor, three (3) of which encumber all of the Debtor's assets, as follows:

(a)     BB&T Bank n/k/a Truist ("BB&T") – UCC #201909813964 filed on October 3, 2019, in Florida, and secured by specific equipment and all of Debtor's other assets (Exhibit "A") (the "BB&T Lien");

(b)     U.S. Small Business Administration ("SBA") – UCC# 202109146896 filed on November 15, 2024, in Florida, and secured by all of Debtor's assets (Exhibit "B") (the "SBA Lien");

(c)     Truist Bank ("Truist") – UCC#202201454825 filed on May 4, 2022, in Florida, and secured by specific equipment and all of Debtor's other assets (Exhibit "C") (the "Truist Lien");

(d)     CT Corporation, as Representative for Ameris Bank d/b/a Balboa Capital ("Balboa") – UCC# 202203423535 filed on October 25, 2022, and secured by specific equipment **only** (Exhibit "D") (the "Balboa Lien");

(e)     TCP Body Space LLC ("TCP") – UCC #20238299066 filed on December 7, 2023, in Delaware, and secured by all assets of the Debtor (Exhibit "E") (the "TCP Lien"); and

(f)     Dominion Aesthetic Technologies, Inc. ("Dominion") – UCC #202401123235 filed on April 29, 2024 (Exhibit "F") (the "Dominion Lien").

13.     Debtor believes that the BB&T Lien and the Truist Lien are one in the same as Truist has merged/taken over BB&T, and that the BB&T Lien and Truist Lien should be treated as one lien encompassing specific equipment and Debtor's assets (hereafter collectively referred to as the "Truist Lien").

14.     The Truist Lien is secured by 5 Candela Gentlemax Pro Systems W/DCD; general intangibles including all payment intangibles, copyrights, trademarks, patents, trade names, tax refunds, company records (paper and electronic), rights under equipment leases, warranties, software licenses, supporting obligations, and all proceeds (cash and non-cash) and provides of the

foregoing (the "Truist Collateral").   The amount due to Truist, as of the date of filing, is approximately $238,914.39.   The Truist Collateral is valued at approximately $8.5 million, over-securing the Truist Lien.

15.     The SBA Lien is secured by all tangible and intangible personal property, including but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code (the "SBA Collateral"), and all accessions, attachments, accessories, parts, supplies and replacements for the SBA Collateral, all products, proceeds and collections thereof and all records and data relating thereto.   The amount due and owing to the SBA, as of the date of filing, is approximately $550,907.53 as reflected in the SBA's Proof of Claim (#11) filed on August 13, 2024.   The Collateral is valued at approximately $8.5 million, which over-secures the SBA Lien.

16.     The Balboa Lien is secured by three (3) specific pieces of equipment pursuant to Agreement Number LA#274100-002 dated October 25, 2022:  a 2022 Candela GentleMax Pro Serial #9914-9035-18869; a 2002 Candela GentleMax Pro Serial #9914-9035-18215; and a 2022 GentleMax Pro Serial #9914-9035-18209 (the "Equipment'), subject to any and all existing and future schedules entered into pursuant to an incorporating the Agreement, together will all accessories, parts, attachments and appurtenances appertaining or attached to any of the Equipment, and all substitutions, trade-ins, proceeds, renewals and replacements of, and improvements and accessions to the Equipment (the "Balboa Collateral").   The amount due to

Balboa, as of the date of filing, is approximately $201,480.00. The Balboa Collateral estimated value is $180,000.00. The Balboa Lien is under-secured and the Debtor proposes interest only monthly payments in the amount of $1,762.95 per month ($201,480.00 x 10.5% = $21,155.40 ÷ 12 months = $1,762.95).

17.     The TCP Lien is secured by all assets of the Debtor (the "TCP Collateral"). The amount due and owing to TCP, as of the date of filing, is approximately $2,400,000.00. The Collateral is valued at approximately $8.5 million, which over-secures the TCP Lien.

18.     The Dominion Lien purports to secure 17 EON Laser Devices (Serial #100002; 10003; 10004; 100006; 100010; 100017; 100021; 100027; 100029; 100030; 100044; 100063; 100065; 100066; 100074; 100075; and 100096) (the "Devices). However, on May 29, 2024, the Debtor returned the Devices to Dominion, and pursuant to an agreement, the Debtor will receive $18,000.00 per Device when sold by Dominion. No money is owed to Dominion, and Dominion is an asset to the Debtor in an amount yet-to-be determined, but with the potential of being $306,000.00.

## DIP FACILITY

19.     The proposed DIP Facility is the most favorable financing the Debtor has been able to obtain. The loan agreement detailing the DIP Facility is pending[1].

20.     The DIP Facility will provide the Debtor with up to $250,000.00 in financing with accrued interest at the rate of nineteen percent (19%) per annum. The initial first interim amount to be authorized for distribution to the Debtor pursuant to the Budget is $42,795.41. All payments shall be deferred until the maturity date on October 31, 2024. In addition to non-payment upon

---

[1] *The Debtor and TCP have agreed in spirit but, since the final loan terms will depend upon the amounts needed by critical (advertising and laser-repair) vendors and will further depend upon proposed budgets which are still being reviewed, the terms set forth in this motion are subject to material change, and the motion will be amended accordingly.*

maturity, the appointment of a trustee, the dismissal of this case, and/or the conversion of this case

to one under Chapter 7, and failure to comply with the Budget, shall all be deemed a default of the

DIP Facility. The DIP Facility shall terms are further detailed as follows:

| Material Terms (Applicable Rule) | DIP Facility Provision; Location[2] |
|---|---|
| **Borrower(s)**<br>Fed. R. Bankr. P. 4001(c)(1)(B) | Body Details, LLC<br><br>*See* Order[3] ¶ ___; DIP Agmt. at preamble. |
| **DIP Lender**<br>Fed. R. Bankr. P. 4001(c)(1)(B) | TCP Body Space, LLC<br><br>*See* Order ___; DIP Agmt. at preamble. |
| **Amount and Facility**<br>Fed. R. Bankr. P. 4001(c)(1)(B)<br>Local Rule[4] 4001-2 | Nonamortized revolving facility in the amount of $250,000.00 of which up to $42,795.41 may be advanced immediately following the entry of the Interim DIP Order, subject to disbursement in accordance with the Approved Budget.<br><br>*See* Order ¶ ___; DIP Agmt. at Recital (¶ A), Art. ___, and definition for "Commitment". |
| **Interest Rate**<br>Fed. R. Bankr. P. 4001(c)(1)(B)<br>Local Rule 4001-2 | 19.0% per annum.<br><br>*See* DIP Agmt. § ___ |
| **Default Interest**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)<br>Local Rule 4001-2 | 21.0% per annum.<br><br>DIP Agmt. § ___ (and definition for "Default Rate") |
| **Fees**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2** | A "Commitment Fee" equal to $25,000. The Debtor shall be obligated for the Commitment Fee, which shall be paid to the DIP Lender on the Effective Date (as defined in Section 6.1 of the DIP Agreement) by the DIP Lender adding the amount of the Commitment Fee to the outstanding balance of the Loans (as defined in the DIP Agreement).<br><br>An "Exit Fee" equal to four percent (4%) of the amount of the DIP Loan.<br><br>Customary reimbursement of DIP Lender's reasonable legal, accounting, appraisal and other fees and expenses incurred by DIP Lender.<br><br>Only with respect to legal fees, the DIP Lender will submit copies of their |

---

[2] This summary is qualified in its entirety by the provisions of the Interim DIP Order and DIP Agreement, as applicable. Capitalized terms used but not otherwise defined in this summary have the meanings given to them elsewhere in this Motion. To the extent there is any conflict between this summary and the Interim DIP Order, the terms of the Interim DIP Order control. The Debtors reserve the right to supplement these statements.

[3] As used herein, "Order" shall mean the Interim DIP Order and "DIP Agmt." shall mean the DIP Agreement.

[4] As used herein, "Local Rule" shall mean the Local Rules of the United States Bankruptcy Court for the Southern District of Florida as supplemented by the Court's "Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing."

| | |
|---|---|
| | respective legal counsel's invoices (redacted to preserve privilege) to the Debtor, counsel to the Debtor, and the U.S. Trustee for review and objection.<br><br>See Order ¶¶ ____; DIP Agmt. §§ _____. |
| **Borrowing Conditions**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2** | Customary borrowing conditions, including:<br>) execution of the DIP Agreement and Note, together with such financing statements which in the opinion of the DIP Lender are desirable to perfect the liens and security interests created under the DIP Loan Documents;<br>) entry of the Interim DIP Order that, among other things, provides that the Liens and security interests in favor of the DIP Lender granted pursuant to the DIP Agreement shall be valid and perfected first priority Liens prior (except for Valid Prior Liens[5] to which such Liens and security interests are subordinate and junior) to all other Liens in or on the DIP Collateral intended to be subject thereto;<br>) Board resolution from Debtor authorizing the Debtor's entry into the DIP Loan Documents and an officer certificate regarding: (i) the representations and warranties, (ii) the absence of any Default or Event of Default; and (iii) the absence of a material adverse change;<br>(d   (d) daily cash balance reports, and such other approvals or documents as the DIP Lender may reasonably request.<br><br>See Order ¶ ____; DIP Agmt. §§ _____. |
| **Prepayment**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2** | The Debtor shall have the right to borrow, repay and, so long as no Event of Default (as defined in the DIP Agreement and discussed below) or the Termination Date (as defined in the DIP Agreement and discussed below) has occurred.<br><br>If at any time the Loan (as defined in the DIP Agreement) outstanding under the DIP Agreement exceed the Commitment (as defined in the DIP Agreement) then available, then the Debtor shall immediately repay the Loans in the amount of such excess.<br><br>See DIP Agmt. §§ ____ |
| **Term**<br><br>**Fed. R. Bankr. P. 4001(b)(1)(B)(iii)**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2** | The earliest of (a) the Maturity Date (i.e., October 31, 2024), (b) the voluntary repayment in full of all DIP Obligations and termination by the Debtor of the DIP Lender's Commitment pursuant to Section ____ of the DIP Agreement, and (c) acceleration of the DIP Obligations by the DIP Lender following the occurrence of an Event of Default.<br><br>See Order ¶ 2 ___; DIP Agmt. § |
| **Security and Priority**<br><br>**Fed. R. Bankr. P. 4001(c)(1)(B)(i), (vii)**<br>**Local Rule 4001-2(a)(4)** | The liens and security interests in favor of the DIP Lender shall have first priority, with respect to the Debtor's present and future right, title and interest in and to accounts, intellectual property, and certain of the personal property of the Debtor whether such property is now existing or hereafter created, acquired or arising and whenever from time to time, including, subject to entry of a Final DIP Order, Avoidance Claims (as further described in the DIP Agreement and |

[5] The term "Valid Prior Liens" means, collectively, liens on property of the Debtor (including the proceeds of such property) that are in existence on the Petition Date (but excluding the Prepetition Liens), but only if the lien on such property (or the proceeds of such property, as applicable) is a valid perfected and non-avoidable encumbrance and such lien is perfected on the Petition Date or that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

|  | Interim DIP Order, the "DIP Collateral").<br><br>The DIP Obligations shall constitute allowed administrative expenses in the Chapter 11 Cases having superpriority status under section 364(c)(1) of the Bankruptcy Code over all other administrative expenses and unsecured claims against the Debtor, subject, as to priority, only to the Carve-Out.<br><br>See Order ¶¶      ; DIP Agmt. §§ |
|---|---|
| **Use of DIP Facility and Cash Collateral**<br>**Fed. R. Bankr. P. 4001(b)(1)(B)(ii)**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2** | The Interim DIP Facility Amount advanced by DIP Lender to the Debtor shall be used by the Debtor in the amounts and for the purposes identified in the Approved Budget to (i) pay related DIP-related transaction costs, fees and expenses of the DIP Facility in accordance with the DIP Loan Documents; and (ii) pay expenses to preserve, maintain and operate the businesses.<br>During the Interim Period, the Debtor shall only use Cash Collateral in the amounts and for the purposes identified in the Approved Budget.<br><br>See Order ¶¶ ____; DIP Agmt. §§ _____ |
| **Approved Budget**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2** | A copy of the Approved Budget is annexed to the Interim DIP Order as Exhibit B.<br><br>Each request for a Borrowing under the DIP Agreement shall be made strictly in compliance with and solely to pay amounts contemplated by the Budget (subject to Permitted Variances), provided that payments on account of Professional Fees, including funding of the Carve-Out, shall not be subject to the Budget.<br><br>.<br><br>See Order ¶¶      , 7; DIP Agmt. §§ |
| **Covenants**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2** | Customary and appropriate affirmative and negative covenants for financings of this type, including, without limitation, relating to (a) financial reporting and notices of material events; (b) information regarding collateral;<br>  (c) continuation of the Debtor' legal existence and conduct of business;<br>  (d) keeping of books and records and granting of inspection rights;<br>  (e) maintenance of properties; (f) maintenance of insurance, (g) compliance with<br>      applicable laws, (h) limitations on activities, (i) use of proceeds, (j) liens,<br>(k) asset disposition, and (l) certain other bankruptcy matters.<br><br>See DIP Agmt. at Articles |
| **Limitations on use of DIP Facility;**<br>**Cash Collateral**<br>**Fed. R. Bankr. P. 4001(b)(1)(B)**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2(a)(9)** | No Prepetition Collateral, Cash Collateral, DIP Collateral, or proceeds thereof, shall include, apply to, or be available for any fees or expenses incurred by any party, including the Debtor or the Committee (if appointed), in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Lender including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Liens, or Superpriority Adequate Protection Claims, or (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the Prepetition Lender's assertion, enforcement or realization on the Prepetition Collateral in accordance with the Prepetition Loan Documents or the Interim Order or any Avoidance Claims against the |

| | |
|---|---|
| | Prepetition Lendee.<br>$20,000 of Cash Collateral to investigate the liens, claims and interests of the Prepetition Lender.<br><br>No proceeds of the DIP Loans can be used to pay Professional Expenses incurred in connection with the assertion of or joinder in any claim, counterclaim, action, contested matter, objection, defense or other proceeding, the purpose of which is to seek or the result of which would be to obtain any order, judgment, declaration, or similar relief (a) seeking damages against the DIP Lender or any DIP Lender indemnitees on account of any alleged cause of action arising on, before or after the Petition Date; (b) invalidating, setting aside, avoiding or subordinating, in whole or in part, any of the DIP Obligations or Liens and security interests in any DIP Collateral granted to DIP Lender under the DIP Agreement, the Interim DIP Order, or the Final DIP Order; (c) declaring any of the DIP Loan Documents or the Prepetition Loan to be invalid, not binding or unenforceable in any respect; (d) preventing, enjoining, hindering or otherwise delaying DIP Lender's enforcement of any of the DIP Loan Documents, the Prepetition Lender's enforcement of the Prepetition Loan Documents or any realization upon any Collateral (unless such enforcement or realization is in direct violation of an explicit provision in any of the Interim DIP Order or Final DIP Order); or (e) declaring any Liens granted or purported to be granted under any of the DIP Loan Documents to have a priority other than the priority set forth therein.<br><br>See Order ¶____; DIP Agmt. § |
| **Entities with Interests in Cash Collateral**<br>**Fed. R. Bankr. P. 4001(b)(1)(B)(i)** | The DIP Lender and Prepetition Lender<br><br>See Order ¶¶____. |
| **Adequate Protection**<br>**Fed. R. Bankr. P. 4001(b)(1)(B)(iv)** | TBD |
| **Stipulations as to Prepetition Claims and Liens**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)(iii)**<br>**Local Rule 4001-2** | Paragraph ____ of the Interim DIP Order contains customary acknowledgments, agreements, stipulations and waivers on behalf of the Debtor and its Estate, subject to a challenge period (discussed below).<br><br>See Order ¶ |
| **Effect of Stipulations / Challenge Period; Release of Claims.**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)(iii), (viii)**<br>**Local Rule 4001-2** | The Debtor's stipulations, admissions and agreements contained in the Interim DIP Order shall be binding upon the Debtor and its Estate, subject only to the challenge rights of third parties, in all circumstances and for all purposes. The Debtor and its Estate moreover agree not to challenge, object to or otherwise contest the validity of the Prepetition Loan Documents, the Prepetition Secured Obligations, or the Prepetition Liens.<br><br>The Debtor's stipulations, admissions, and agreements contained in the Interim DIP Order shall be binding upon all other parties in interest, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Case (including the Committee) and any other person or entity acting or seeking to act on behalf of the Debtor's Estate, including any chapter 7 or chapter 11 trustee or examiner appointed for the Debtor, in all circumstances and for all |

|  | purposes unless a Challenge[6] is brought during the Challenge Period,[7] and such Challenge is successful. A timely Challenge by a party granted standing by the Court under the Interim DIP Order shall be the sole mechanism for a party in interest or Committee (if appointed) to contest the validity of the Prepetition Loan Documents, the Prepetition Secured Obligations, or the Prepetition Liens or raise any other Challenge.<br><br>See Order ¶ D. |
|---|---|
| **Events of Default**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2** | The DIP Agreement provides for customary events of default, including:<br>(a) the Debtor shall: (i) fail to pay the principal of the Note as and when due and payable; or (ii) fail to pay interest on the Note or any fee or other amount due under the DIP Agreement within five (5) days of the date such amount is due and payable; or<br>(b) any material representation or material warranty made or deemed made by the Debtor in the DIP Agreement or in any other DIP Loan Document to which it is a party or which is contained in any certificate, document, opinion, financial or other statement furnished at any time under or in connection with any DIP Loan Document shall prove to have been incorrect in any material respect on or as of the date made or deemed made; or<br>(c) an order with respect to the Chapter 11 Case shall be entered by the Bankruptcy Court, or the Debtor shall file an application for an order with respect to the Chapter 11 Case (i) appointing a trustee or (ii) appointing an examiner; or<br>(d) an order with respect to the Chapter 11 Case shall be entered by the Bankruptcy Court dismissing the Chapter 11 Case or converting the Chapter 11 Case to chapter 7 case;<br><br>(e) an order with respect to the Chapter 11 Case shall be entered by the Bankruptcy Court without the express prior written consent of the DIP Lender (i) to revoke, reverse, stay, modify or amend (in a manner materially adverse to the DIP Lender), or supplement the Interim Order or any Final Order or any of the DIP Loan Documents, (ii) approving the incurrence by the Debtor of any debt not contemplated under the DIP Agreement, (iii) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority equal to or superior to the priority of the DIP Lender in respect of the DIP Obligations, except for Carve-Out, or (iv) to grant or permit the grant of a Lien on the DIP Collateral other than Permitted Liens; or<br>(f) the Security Documents shall at any time after their execution and delivery and for any reason cease: (i) to create a valid and perfected security interest and DIP Lien in and to the property purported to be subject thereto having the |

---

[6] The Interim DIP Order defines "Challenges" to mean:

(A)      objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Secured Obligations, the Prepetition Loan, the Prepetition Collateral, or the Prepetition Liens, or
(B)      otherwise asserting or prosecuting any claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Lender in connection with matters related to the Prepetition Secured Obligations, the Prepetition Loan, the Prepetition Collateral, or the Prepetition Liens.
[7] The Interim DIP Order defines "Challenge Period" to mean:

(a) a committee or any other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter by no later than (i) (x) with respect to parties in interest with requisite standing other than a statutory committee, 75 calendar days after entry of the Final DIP Order and (y) with respect to the statutory committee, 60 calendar days after the entry of the Final DIP Order, (ii) any such later date as has been agreed to, in writing, by the Prepetition Lender and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth above.

| | priority specified in the Security Documents; or (ii) to be in full force and effect or shall be declared null and void, or the validity or enforceability thereof shall be contested by the Debtor, or the Debtor shall deny it has any further liability or obligation under any such agreement, or the Debtor shall fail to perform any of its obligations thereunder; or<br><br>(g)    the later of the date (i) the Debtor shall cease to have the exclusive right to file a plan of reorganization in the Chapter 11 Case; or (ii) a party in interest shall file a competing plan of reorganization which does not provide for the payment in full of the DIP Obligations in cash;<br><br>(h)    the Debtor shall: (i) fail to perform or observe any other material term, material covenant or material agreement on its part to be performed or observed in any business DIP Loan Document, which failure shall continue uncured for a period in excess of five (5) days; or (ii) fail to comply with any of the terms or provisions of the Financing Orders;<br><br>(i)    the failure to comply with the provisions of the Interim or Final DIP Orders; or<br><br>(j)    the failure to comply with any Milestone which failure is not cured within two (2) days.<br><br>See Order ¶ ___; DIP Agmt. § ___. |
|---|---|
| **Milestones**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2(a)(2), (12)** | The DIP Agreement provides for the following case milestones:<br><br>(a)    The motion seeking approval of the Sale Transaction[8] and related motion to assume and assign necessary unexpired leases and licenses shall be filed within ten (10) days of entry of the Interim DIP Order;<br><br>(b)    The Final DIP Order shall be entered by September 4, 2024;<br><br>(c)    The Bidding Procedures Order shall be entered by September 18, 2024;<br><br>(d)    The deadline for the submission of bids for the Sale Transaction shall be October 2, 2024;<br><br>(g)    The auction in connection with the Sale Transaction shall be on October 16, 2024;<br><br>(h)    The Sale Order shall be entered by October 24, 2024; and<br><br>(i)    The Sale Transaction shall close by no later than October 31, 2024.<br><br>See Order ___; DIP Agmt. § ___. |
| **Section 506(c) Waiver**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)**<br>**Local Rule 4001-2(a)** | Subject to entry of a Final DIP Order, no costs or expenses of administration which have been or may be incurred in the case at any time shall be charged against the Prepetition Lender, DIP Lender, or the interests of the DIP Lender in the DIP Collateral.<br><br>See Order ¶ ___; DIP Agmt. § ___. |
| **Section 552(b)**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)** | Subject to entry of a Final DIP Order, DIP Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Obligations and/or any proceeds, products, offspring or profits of any of the foregoing. |

[8] "Sale Transaction" means (a) the sale of all or substantially all of the Debtors' business assets as a going concern as approved by the Bankruptcy Court pursuant to the applicable provisions of the Bankruptcy Code; provided that any going concern sale shall either be (x) to the Stalking Horse Bidder, or (y) to another successful bidder at the auction for the Sale Transaction; or (b) in the event that no Sale Transaction contemplated by the preceding clause (a) is available to the Debtors, the liquidation of the Debtors' business and all of the assets relating thereto under Section 363 of the Bankruptcy Code, as approved by the Bankruptcy Court.

| | |
|---|---|
| | See Order ¶ |
| **Liens on Avoidance Actions**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)(xi)** | Subject to entry of a Final DIP Order, the DIP Lender's collateral package will include a lien on Avoidance Claims. |
| | See Order ____ ; DIP Agmt.'s definition for "Collateral". |
| **Automatic Stay/Modification**<br>**Fed. R. Bankr. P. 4001(c)(1)(B)(iv)**<br>**Local Rule 4001-2(a)(10)** | The proposed Interim DIP Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to permit (a) the Debtor to grant the liens and claims provided for under the DIP Facility, (b) the Debtor to incur the liabilities and obligations contemplated in the DIP Loan Documents, (c) the Debtor to pay all amounts required in accordance with the DIP Loan Documents, (d) the DIP Lender, subject to certain limitations, to exercise remedies upon the occurrence and during the continuation of an Event of Default, (e) the DIP Lender to implement all of the terms, rights, benefits, privileges, remedies, and provisions of the Interim DIP Order; (f) grant the Adequate Protection Liens and the Superpriority Adequate Protection Claims, and (g) perform such acts as the Prepetition Lender may request in its reasonable discretion to assure the perfection and priority of the liens granted in the Interim DIP Order.<br><br>Upon the occurrence of an Event of Default that, after five (5) days' notice remains uncured, DIP Lender may by notice to Debtor declare the DIP Facility terminated, cease making any advances under the DIP Facility and declare the unpaid principal amount, interest accrued thereon and all other amounts owed by the Debtor under the DIP Loan Documents, including any fees due to be immediately due and payable without further order of the Court. Additionally, the DIP Lender may submit an order on seven (7) days' notice that identifies the applicable uncured Event of Default and requests, among other things, that the Court enter an order determining that: (a) the automatic stay under section 362(a) of the Bankruptcy Code has been terminated with respect to DIP Lender; and (b) DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Documents including, without limitation, exercising and enforcing any and all rights and remedies under the DIP Facility with respect to the DIP Collateral and terminating any obligations of DIP Lender under the DIP Loan Documents.<br><br>In the event the Debtor, the Committee (if any), the U.S. Trustee, or any other party in interest seeks a hearing within the settlement period (the "DIP Default Hearing"), DIP Lender shall refrain from enforcing its rights and remedies under the DIP Facility until the Court makes a ruling or an agreement has otherwise been reached, provided however, that except with respect to the Carve-Out, the DIP Lender shall not be obligated to make any further advances pending such determination. Unless the Court orders otherwise, upon the termination of the seven (7) day notice period referenced above, the automatic stay under section 362(a) of the Bankruptcy Code shall be terminated with respect to DIP Lender and the DIP Lender may exercise any and all rights and remedies under the DIP Facility with respect to the DIP Collateral without further Court order. All proceeds realized in connection with the exercise of the rights and remedies of DIP Lender shall be applied to reduce the DIP Obligations at the DIP Lender's sole discretion.<br><br>At any DIP Default Hearing requested by the Debtor, the Committee (if any), the U.S. Trustee, or any other party in interest, the person or entity requesting the hearing shall have the burden of proof and the only issue to be determined |

| | and decided by the Court at any such DIP Default Hearing is whether the Event of Default has occurred and is continuing. <br><br> See Order ¶ ___ ; DIP Agmt. § |
|---|---|

21.     As part of the agreement for advancing funds under the DIP Facility, TCP will receive a super-priority administrative expense claim pursuant to 11 U.S.C. § 364(c)(1), as well as, pursuant to 11 U.S.C. § 364(d), a senior priming claim secured by all assets of the Debtor and the Debtor's estate except for causes of action under chapter 5 of the United States Bankruptcy Code.

22.     As of the date of the filing of the Petition, the tangible personal property of the Debtor had a total value of $8,755,768.34.  A list of the Debtor's assets as reflected on Schedule A/B: Assets – Real and Personal Property, is attached as Exhibit "G" (collectively referred to as the "Assets").

23.     The Debtor's Assets are more than sufficient to secure the Truist Lien, the SBA Lien, the TCP Lien, and the priming lien of TCP.

24.     The Debtor's immediate cash needs are evidenced by the budget attached as Exhibit "H" (the "Budget").  Based on the Budget, the Debtor believes it will be cash-flow negative and requires financing to continue operations.

25.     Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure, the Court may authorize the obtaining of credit. In the event the Debtor does not obtain post-petition financing, it will not have the available funds with which to continue its business operations. Accordingly, the Debtor respectfully submits that obtaining post-petition financing is necessary, in order to avoid immediate and irreparable harm to the Debtor.

26.     The Debtor respectfully submits that the proposed financing is in the best interest

of the estate and its creditors, given the fact that the Debtor does not have the ability to obtain financing in conventional markets and has been unable to obtain financing elsewhere or otherwise on more favorable terms., *i.e.*, a lower interest rate or without the protections under 11 U.S.C. §§ 364(c)(1) and 364(d). The additional financing will allow for the Debtor to preserve the value of the Debtor's business and generate greater income and thus benefit the estate.

27.     The terms of the DIP Facility are fair and reasonable, reflect the Debtor's good faith and proper exercise of prudent business judgment consistent with its fiduciary duties and are in the best interests of the Debtor and its estate, and such agreements and terms thereof constitute reasonably equivalent value and fair consideration.

28.     The Debtor requires the use of the DIP Facility to fund necessary operating expenses of its business. It will be used primarily to pay trade creditors, payroll and to maintain its systems.

29.     Contemporaneously with this Motion, the Debtor has filed an *Emergency Motion for Use of Cash Collateral and to Authorize Adequate Protection Payments* (DE 31) which is scheduled for hearing on August 20, 2024 at 1:30 p.m.

30.     While the secured lenders, Truist, the SBA, and TCP are over-secured, as adequate protection for use of cash collateral, the Debtor will grant its secured lender replacement liens of the same extent, validity, and priority as their prepetition security interests. To the extent the cash collateral declines in value, TCP will receive a super-priority administrative claim equal to the amount of the diminution. However, any replacement lien or administrative claim will be subordinate to any amounts due to the Clerk of Court, United States Trustee fees, and the Debtor's or any committee's professional fees allowed under 11 U.S.C. §503. No party will receive adequate protection payments.

## ARGUMENT

31.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain post-petition financing under certain circumstances. Provided that an agreement to obtain credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its reasonable business judgment in obtaining such credit. *See In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *In re Ames Dept Stores, Inc*., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 [of the Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

32.     Further, sections 364(c)(1) and 364(d) permit a debtor to obtain credit outside the ordinary course of business allowable as super-priority administrative expense secured by a senior priming lien if credit is not otherwise available and if other secured creditors are adequately protected.  As argued in paragraph 26 below, the secured creditors are adequately protected because the total value of the debtor's personal property exceeded the secured creditor's indebtedness.

33.     The Debtor requires the financing described in this Motion to fund operating expenses, including payroll, through the pendency of this case. Failure to fund these expenses will result in a permanent shutdown of the Debtor's business and total loss of any going-concern value. All parties in interest, including unsecured creditors, would receive less.  Even the secured creditors, who are adequately protected because of the value of the Debtor's personal property,

would be impacted if the Debtor cannot preserve that personal property. Accordingly, the DIP Facility is a sound exercise of the Debtors' business judgment and in the best interest of all interested parties.

34.    The Debtor's use of property of its estate is governed by Code section 363, which provides in pertinent part that:

> *If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.*

11 U.S.C. § 363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with § 363. *See* 11 U.S.C. § 1107(a).

35.    When a chapter 11 debtor in possession is authorized to operate its business, it may use property of estate in the ordinary course of business, but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. 11 U.S.C. § 363(c). The Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . ." 11 U.S.C. § 363(a).

36.    It is appropriate for the Court to authorize the Debtor to use cash collateral because the potentially secured creditors are being adequately protected, such use will preserve the going concern value of the estate to the benefit of all interested parties, and all parties with an interest in the Debtor's cash collateral have consented to the relief sought in this Motion.

## THE SECURED PARTIES ARE ADEQUATELY PROTECTED

37.    The Bankruptcy Code does not define "adequate protection" but does provide a

non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in its collateral. *See* 11 U.S.C. § 361; *see In re Potvin Lumber Company, Inc.*, 24 B.R. 54 (Bankr. D. Vt. 1982) (ordering that the debtor could use cash collateral, and finding that the bank was adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness).

38.     Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978). For example, *O'Connor* states that "[i]n order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." 808 F. 2d at 1396. (citations omitted).

39.     Adequate protection is meant to ensure that a secured creditor receives the value for which it originally bargained pre-bankruptcy. *Swedeland Dev. Group., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citation omitted). The essence of adequate protection is to ensure the maintenance and continued responsibility of lien values during the interim between filing and confirmation in a case. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982).

40.     Truist, the SBA and TCP are the lenders secured by all of the Debtor's Assets.  The Debtor has proposed to make adequate protection payments to Truist in the amount of $1,356.00; and the SBA in the amount of $1,562.50 per month until confirmation of Debtor's Chapter 11 plan of reorganization or until further order of the Court.

41.     The adequate protection provided to Truist and the SBA includes replacement liens on the Debtor's assets and an administrative claim with priority over all administrative claims to

the extent of the diminution of the potentially secured parties' collateral. Truist and the SBA will also receive adequate protection in the form of the Debtor's resumed cash flow positive operations and preservation of the Debtor's going concern value.

42.     The Debtor's use of cash collateral and the protections afforded to TCP are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of their collateral.

43.     The continued operation of the Debtor's business will preserve its going concern value, enable the Debtor to capitalize on that value through a possible sale of its business, and ultimately facilitate the Debtors' ability to confirm a chapter 11 plan. However, if the Debtor is not allowed to use cash collateral, it will be unable to resume operating and not be able to realize on its going concern value.

44.     It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> *A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.*

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984); *see In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (debtor permitted to use cash collateral when creditor was under secured because such use was necessary to its continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business).

45.     If the Debtor cannot use cash collateral, it will be forced to liquidate its assets. By contrast, permitting cash collateral use will allow the Debtor to resume operations and preserve

the going concern value of its business which will inure to the benefit of all creditors.

46.    A proposed order is attached as Exhibit "I".

**WHEREFORE**, the Debtor respectfully requests that this Court (i) grant this Motion; (ii)

(ii) authorize the Debtor to obtain post-petition financing on the terms set forth herein and in the

term sheet; (ii) grant the super-priority claims and replacement liens; (iii) schedule final hearing;

and (iv) for such other and further relief as is just and proper.

Dated: August 15, 2024.                    **VAN HORN LAW GROUP, P.A.**
                                           500 N.E. 4th Street, Suite 200
                                           Fort Lauderdale, FL 33301
                                           Telephone: (954) 765-3166
                                           Facsimile: (954) 756-7103

                                    By: /s/  **Chad Van Horn, Esq.**
                                           Chad Van Horn, Esq.
                                           Florida Bar No. 64500
                                           chad@cvhlawgroup.com
                                           Julia Anne Osmolia, Esq.
                                           Florida Bar No. 1035614
                                           julia@cvhlawgroup.com

# EXHIBIT "A"

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY
**FILED**
2019 Oct 03 10:15 AM
****** 201909813964 ******

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141 |

| B. E-MAIL CONTACT AT FILER (optional) |
| uccfilingreturn@wolterskluwer.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)    9418 – BB & T - MASTER

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

71937820

FLFL

File with: Department of State, FL

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BODY DETAILS, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 433 PLAZA REAL STE 245 | BOCA RATON | FL | 33432-3945 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Branch Banking and Trust Company | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P O Box 1626 | Wilson | NC | 27894-9961 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

The Equipment, including all Accessions thereto, all manufacturer's warranties therefor, and all parts and tools therefor, specifically described as follows: Purchase Money Security Interest in Equipment and General Intangibles-
GentleMax Pro System W/DCD PN: 9914-009035 SN: 9914-9035-13022 PN: 7122-00-9419 SN: Z2452 PN: 7122-00-9401 SN: 5A62D
PicoWay System + 3rd WL + Resolve W/HE 532 PN: 9914-04-9060 (SN: 9914-9060-4640)
PRO SERIES DCD HP W/O FIBER PN: 7122-00-9401 (SN: 5A61D)
PRO SERIES FIBER PN: 7122-00-9419 (SN: Z2451)
S&H, Med Laser, Med Best Way 0801-00-0095
and general intangibles including all payment intangibles, copyrights, trademarks, patents, trade names, tax refunds, company records (paper and electronic), rights under equipment leases, warranties, software licenses, supporting obligations, and all proceeds (cash and non-cash) and products of the foregoing.  Notice: pursuant to an agreement between Debtor and Secured Party, Debtor has agreed not to grant subsequent security interests in the collateral described herein.

☒ All documentary stamps due and payable
or to become due and payable pursuant to s. 201.22.F.S. have been paid

☐ Florida documentary stamp tax is not required

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative |

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

| 8. OPTIONAL FILER REFERENCE DATA: | | |
| 71937820 | 8540170 | Commercial |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER** (optional)<br>ALEXANDRA KATICH (720)292-2027 | |
| **B. E-MAIL CONTACT AT FILER** (optional)<br>ALEXANDRA.KATICH@LEWISBRISBOIS.COM | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>**Filed: 11:59 AM 10/04/2019**<br>**U.C.C. Initial Filing No: 2019 6936285** |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>1700 LINCOLN STREET<br>STE 4000<br>DENVER, CO 80203 | **Service Request No:  20197387726** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| BODY DETAILS, LLC | | | | | |
| **OR** 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS<br>327 PLAZA REAL BLVD, SUITE 217 | CITY<br>BOCA RATON | STATE<br>FL | POSTAL CODE<br>33432 | | COUNTRY<br>US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| **OR** 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| BRANCH BANKING AND TRUST COMPANY | | | | | |
| **OR** 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>200 WEST SECOND STREET | CITY<br>WINSTON-SALEM | STATE<br>NC | POSTAL CODE<br>27101-4019 | | COUNTRY<br>US |

4. **COLLATERAL:** This financing statement covers the following collateral

See attached.
Collateral Description - please see attached

---

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**        **International Association of Commercial Administrators**

Delaware E-UCC

Debtor:        BODY DETAILS, LLC
Secured Party: BRANCH BANKING AND TRUST COMPANY

THIS FINANCING STATEMENT COVERS THE FOLLOWING COLLATERAL: All now owned and hereafter acquired and wherever located personal property of Debtors identified below, each capitalized term as defined in Article 9 of the Delaware Uniform Commercial Code:

i.      Accounts, including all contract rights, and all health-care-insurance receivables.
ii.     Inventory, including all returned inventory.
iii.    Equipment, including all Accessions thereto, and all manufacturers' warranties, parts and tools therefore.
iv.     Investment Property.
v.      Instruments, including all promissory notes and certificated certificates of deposit.
vi.     Deposit Accounts with Secured Party.
vii.    Chattel Paper (whether tangible or electronic).
viii.   Goods, including all Fixtures and timber to be cut.
ix.     Farm Products, including all crops grown, growing or to be grown, livestock (born and unborn), supplies used or produced in a farming operation, and products of crops and livestock.
x.      As-Extracted Collateral from every county and state.
xi.     All Letter-of-Credit Rights.
xii.    Documents of Title.
xiii.   Commercial Tort Claims.
xiv.    Money, including currency and/or rare coins delivered to and in possession of the Secured Party.
xv.     Software.
xvi.    Manufactured Homes.
xvii.   Vehicles.
xviii.  General intangibles, including all Payment Intangibles, copyrights, trademarks, patents, tradenames, tax refunds, company records (paper and electronic), rights under equipment leases, warranties, software licenses.
xix.    Supporting Obligations.
xx.     To the extent not listed above as original collateral, all proceeds (cash and non-cash) and products of the foregoing.

This Financing Statement is intended to cover "all assets" of the Debtor.

# EXHIBIT "B"

**STATE OF FLORIDA UNIFORM COMMERICAL CODE FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

Corporation Service Company; 1-800-858-5294
Email FLSOSUCCFilingsV3@cscglobal.com

B. SEND ACKNOWLEDGEMENT TO:

**Florida Secured Transaction Registry**

# FILED

2021 Nov 15 10:38 AM

****** 202109146896 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| BODY DETAILS, LLC | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | | | |
| 433 PLAZA REAL STE 245 | | This space not available. | | | |
| MAILING ADDRESS Line Two | | CITY | STATE | POSTAL CODE | COUNTRY |
| | | BOCA RATON | FL | 33432 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS Line One | | This space not available. | | | |
| MAILING ADDRESS Line Two | | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| U.S. Small Business Administration | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS Line One | | | | | |
| 2 North 20th Street, Suite 320 | | This space not available. | | | |
| MAILING ADDRESS Line Two | | CITY | STATE | POSTAL CODE | COUNTRY |
| | | Birmingham | AL | 35203 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.ALL DOCUMENTARY STAMPS DUE AND PAYABLE OR TO BECOME DUE AND PAYABLE, HAVE BEEN PAID. 229696 9109

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    240835

STANDARD FORM - FORM UCC-1 (REV.05/2013)        Filing Office Copy        Approved by the Secretary of State, State of Florida

# EXHIBIT "C"

**STATE OF FLORIDA UNIFORM COMMERICAL CODE FINANCING STATEMENT FORM**

Florida Secured Transaction Registry

# FILED

2022 May 04 06:09 PM

****** 202201454825 ******

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

Wolters Kluwer Lien Solutions; (800)331-3282
Email ctlsweback@wolterskluwer.com

B. SEND ACKNOWLEDGEMENT TO:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BODY DETAILS, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | |
| 433 Plaza Real Suite 245 | | This space not available. | |
| MAILING ADDRESS Line Two | CITY Boca Raton | STATE FL | POSTAL CODE 33432 | COUNTRY USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a or 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS Line One | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Truist Bank | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS Line One | | | |
| P O Box 1626 | | This space not available. | |
| MAILING ADDRESS Line Two | CITY Wilson | STATE NC | POSTAL CODE 278949961 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**

The Equipment, including all Accessions thereto, all manufacturer's warranties therefor, and all parts and tools therefor, specifically described as follows: Purchase Money Security Interest in Equipment - 5 Candela Gentlemax Pro Systems W/DCD, general intangibles including all payment intangibles, copyrights, trademarks, patents, trade names, tax refunds, company records (paper and electronic), rights under equipment leases, warranties, software licenses, supporting obligations, and all proceeds (cash and non-cash) and products of the foregoing. Notice: pursuant to an agreement between Debtor and Secured Party, Debtor has agreed not to grant subsequent security interests in the collateral described herein.

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    86361439-63775974

STANDARD FORM - FORM UCC-1 (REV.05/2013)      Filing Office Copy      Approved by the Secretary of State, State of Florida

# EXHIBIT "D"

**STATE OF FLORIDA UNIFORM COMMERICAL CODE FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

Wolters Kluwer Lien Solutions; (800)331-3282
Email ctlsweback@wolterskluwer.com

B. SEND ACKNOWLEDGEMENT TO:

**Florida Secured Transaction Registry**

# FILED

2022 Oct 25 04:33 PM

****** 202203423535 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| BODY DETAILS, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | |
| 327 Plaza Real Blvd Suite 217 | | This space not available. | |
| MAILING ADDRESS Line Two | CITY Boca Raton | STATE FL | POSTAL CODE 33432 | COUNTRY USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS Line One | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| C T Corporation System, As Representative | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS Line One | | | |
| 330 N Brand Blvd, Suite 700 | | This space not available. | |
| MAILING ADDRESS Line Two Attn: SPRS | CITY Glendale | STATE CA | POSTAL CODE 91203 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All equipment subject to that certain Agreement Number LA# 275100-002 dated
10/25/2022, between Secured Party as Lessor/Creditor and Debtor as Lessee/Debtor, and
subject to any and all existing and future schedules entered into pursuant to and
incorporating said Agreement, together with all accessories, parts, attachments and
appurtenances appertaining or attached to any of the Equipment, and all
substitutions, trade-ins, proceeds, renewals and replacements of, and improvements
and accessions to the Equipment. LA# 275100-002

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    89530094-65132913

STANDARD FORM - FORM UCC-1 (REV.05/2013)      Filing Office Copy      Approved by the Secretary of State, State of Florida

# EXHIBIT "E"

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC 1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFILING@CSCGLOBAL.COM

**C. SEND ACKNOWLEDGMENT TO:**  (Name and Address)

CSC

801 ADLAI STEVENSON DRI

SPRINGFIELD, IL 62703

US

Delaware Department of State
U.C.C. Filing Section
Filed: 02:59 PM 12/07/2023
U.C.C. Initial Filing No: 2023 8299066

Service Request No:  20234163979

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BODY DETAILS, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 433 PLAZA REAL, SUITE 245 | BOCA RATON | FL | 33432 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| TCP BODY SPACE LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 399 PARK AVENUE, 39TH FLOOR | NEW YORK | NY | 10022 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
**All assets of Debtor.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:
3000876.000001:1329460-1

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

# EXHIBIT "F"

**STATE OF FLORIDA UNIFORM COMMERCIAL CODE**
**FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
GERRY SHERIDAN; 8323288520

B. Email GSHERIDAN@DOMINIONAESTHETIC.COM

C. SEND ACKNOWLEDGEMENT TO:
Name
Address
Address
City/State/Zip

Florida Secured Transaction Registry

# FILED

2024 Apr 29 09:38 AM

********* 202401123235 *********

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1. DEBTOR'S  EXACT FULL LEGAL NAME**  - INSERT ONLY  ONE  DEBTOR NAME  **(1a OR 1b)** - Do Not Abbreviate or Combine Names

| 1.a  ORGANIZATION'S NAME BODY DETAILS, LLC | | | |
|---|---|---|---|
| 1.b  INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1.c  MAILING ADDRESS Line One 801 N FEDERAL HWY | This space not available. | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33432 / COUNTRY USA |

**2. ADDITIONAL DEBTOR'S   EXACT FULL LEGAL NAME** - INSERT ONLY   ONE  DEBTOR NAME  **(2a OR 2b)** - Do Not Abbreviate or Combine Names

| 2.a  ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2.b  INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2.c  MAILING ADDRESS Line One | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE / COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY **ONE**  SECURED PARTY  **(3a OR 3b)**

| 3.a  ORGANIZATION'S NAME DOMINION AESTHETIC TECHNOLOGIES, INC. | | | |
|---|---|---|---|
| 3.b  INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3.c  MAILING ADDRESS Line One 14950 HEATHROW FOREST PARKWAY | This space not available. | | |
| MAILING ADDRESS Line Two SUITE 190 | CITY HOUSTON | STATE TX | POSTAL CODE 77032 / COUNTRY USA |

**4.** This **FINANCING STATEMENT** covers the following collateral:

17 EON LASER DEVICES [SERIAL #:100002,100003,100004,100006,100010,100017,100021,100027,100029,100030,100044,100063,100065, 100066,100074, 100075,100096]

---

**5.** ALTERNATE DESIGNATION (if applicable)  ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR

☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

---

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

■ Florida Documentary Stamp Tax is not required.

---

**7. OPTIONAL FILER REFERENCE DATA**

---

STANDARD FORM - FORM UCC-1 (REV.05/2013)          Filing Office Copy          Approved by the Secretary of State, State of Florida

# EXHIBIT "G"

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | BODY DETAILS LLC |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property          12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1:    Cash and cash equivalents

1. Does the debtor have any cash or cash equivalents?

☐ No.  Go to Part 2.
☒ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3.  **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | Truist Bank | Business Checking | 5857 | $20.00 |
| 3.2. | Truist Bank | Business Checking | 6586 | $27,474.09 |
| 3.3. | Truist Bank | Other financial account | 1689 | $0.00 |

4.    **Other cash equivalents** *(Identify all)*

5.    **Total of Part 1.**
      Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| $27,494.09 |
|---|

### Part 2:    Deposits and Prepayments

6. Does the debtor have any deposits or prepayments?

☒ No.  Go to Part 3.
☐ Yes Fill in the information below.

### Part 3:    Accounts receivable

10. Does the debtor have any accounts receivable?

☐ No.  Go to Part 4.
☒ Yes Fill in the information below.

Software Copyright (c) 1996-2024 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

Debtor    BODY DETAILS LLC                                      Case number *(if known)* _____
          Name

11.    **Accounts receivable**

11a. 90 days old or less:        1,086,910.38      -               0.00   = ....           $1,086,910.38
                             face amount                doubtful or uncollectible accounts

11a. 90 days old or less:                0.00      -               0.00   = ....                   $0.00
                             face amount                doubtful or uncollectible accounts

11b. Over 90 days old:             234,250.26      -         234,250.26   =....                    $0.00
                             face amount                doubtful or uncollectible accounts

12.    **Total of Part 3.**
       Current value on lines 11a + 11b = line 12.   Copy the total to line 82.            | $1,086,910.38 |

| Part 4: | **Investments** |
| --- | --- |

13. **Does the debtor own any investments?**

☐ No.   Go to Part 5.
☒ Yes Fill in the information below.

| | | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- | --- |
| 14. | **Mutual funds or publicly traded stocks not included in Part 1** Name of fund or stock: | | |
| 15. | **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture** Name of entity: | % of ownership | |
| 15.1. | Body Details Alpharetta LLC (FEIN 87-2491334); Active but not operating | 100  % | $0.00 |
| 15.2. | Body Details Altamonte Springs LLC (FEIN 86-3850881); Active and operating | 100  % | $0.00 |
| 15.3. | Body Details Aventura LLC (FEIN 32-0373319); Active and operating | 100  % | $0.00 |
| 15.4. | Body Details Boca Raton LLC (FEIN 46-5645749); Active and operating | 100  % | $0.00 |
| 15.5. | Body Details Boynton Beach LLC (FEIN 38-4049838); Active but not operating | 100  % | $0.00 |
| 15.6. | Body Details Brandon LLC (FEIN 86-3839743); Active but not operating | 100  % | $0.00 |

Debtor    BODY DETAILS LLC                                    Case number *(If known)* _____
          Name

| | | | | | |
|---|---|---|---|---|---|
| 15.7. | Body Details Coral Gables LLC (FEIN 36-4728672); Active but not operating | 100 | % | | $0.00 |
| 15.8. | Body Details Coral Springs LLC (FEIN 36-4904840); Active but not operating | 100 | % | | $0.00 |
| 15.9. | Body Details Fort Lauderdale LLC (FEIN 35-2441207); Active but not operating | 100 | % | | $0.00 |
| 15.10. | Body Details Homestead LLC (FEIN 85-3554398); Active but not operating | 100 | % | Revenue based | $0.00 |
| 15.11. | Body Details Kendall LLC (FEIN 80-0956821); Active and operating | 100 | % | | $0.00 |
| 15.12. | Body Details Kennesaw LLC (FEIN 87-2611598); Active and operating | 100 | % | | $0.00 |
| 15.13. | Body Details Largo LLC (FEIN 92-0997809); Active but not operating | 100 | % | Revenue based | $0.00 |
| 15.14. | Body Details Midtown Miami LLC (FEIN 35-2539378); Active but not operating | 100 | % | | $0.00 |
| 15.15. | Body Details Oviedo LLC (FEIN 87-2475559); Active but not operating | 100 | % | | $0.00 |
| 15.16. | Body Details Palm Beach Gardens LLC (FEIN 90-0810696); Active but not operating | 100 | % | | $0.00 |
| 15.17. | Body Details Pembroke Pines LLC (FEIN 30-0959931); Active and operating | 100 | % | | $0.00 |
| 15.18. | Body Details Saint Petersburg LLC (FEIN 87-3104440); Active but not operating | 100 | % | | $0.00 |
| 15.19. | Body Details Midtown Tampa LLC (FEIN 85-2647481); Active and operating | 100 | % | | $0.00 |

Debtor     BODY DETAILS LLC             Case number *(If known)* _____
          Name

| | | | | |
|---|---|---|---|---|
| 15.20. | Body Details Wellington LLC (FEIN 37-1904545); Active but not operating | 100 | % | $0.00 |
| 15.21. | Body Details Wesley Chapel LLC (FEIN 87-2840383); Active but not operating | 100 | % | $0.00 |
| 15.22. | Body Details West Palm Beach LLC (FEIN 84-4688338); Active and operating | 100 | % | $0.00 |
| 15.23. | Body Details Winter Park LLC (FEIN 87-0892126); Active but not operating | 100 | % | $0.00 |

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**
Describe:

17. **Total of Part 4.**

     Add lines 14 through 16.    Copy the total to line 83.             $0.00

**Part 5:**    **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

   ☐ No.   Go to Part 6.
   ☒ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** Botox 29,769 units | 7/23/2024 | $0.00 | Recent cost | $193,013.59 |
| RESTYLANE L 1ML 1/EA x 15 | 7/23/2024 | $0.00 | Recent cost | $3,973.20 |
| JuveDerm Ultra | 7/23/2024 | $0.00 | Recent cost | $695.08 |

20. **Work in progress**

21. **Finished goods, including goods held for resale**
   Various products for sale    7/23/2024      $0.00     Recent cost       $28,698.00

22. **Other inventory or supplies**

23. **Total of Part 5.**

     Add lines 19 through 22.    Copy the total to line 84.             $226,379.87

24. **Is any of the property listed in Part 5 perishable?**
   ☒ No
   ☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

Software Copyright (c) 1996-2024 Best Case, LLC - www.bestcase.com             Best Case Bankruptcy

Debtor    BODY DETAILS LLC                                    Case number *(If known)* _____
          Name

☒ No
☐ Yes. Book value _____  Valuation method _____  Current Value _____

26.    **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
       ☒ No
       ☐ Yes

Part 6:    **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☒ No.   Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.   Go to Part 8.
☒ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39.    **Office furniture**<br>13 Couches, 23 Sofa Chairs, 9 Desks, 33 Coffee Tables/Side Tables,    26 Desk Chairs, 16 Treatment Beds, 21 Rolling Stools, 2 Lobby Chairs, 4 Bar Stools, 4 Kitchen Chairs | $0.00 | Debtor's Opinion | $16,700.00 |
| 40.    **Office fixtures** | | | |
| 41.    **Office equipment, including all computer equipment and communication systems equipment and software**<br>Proprietary Software | $0.00 | Debtor's Opinion | $4,764,684.00 |
| 38 Monitors, 14 Mac Minis, 29 Ipads/Tablets, 14 Printers, 6 Shredders, 17 TVs | $0.00 | Debtor's Opinion | $13,000.00 |

42.    **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

43.    **Total of Part 7.**
       Add lines 39 through 42.    Copy the total to line 86.

| $4,794,384.00 |
|---|

44.    **Is a depreciation schedule available for any of the property listed in Part 7?**
       ☒ No
       ☐ Yes

45.    **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
       ☒ No
       ☐ Yes

**Part 8:    Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.   Go to Part 9.
☒ Yes Fill in the information below.

Software Copyright (c) 1996-2024 Best Case, LLC - www.bestcase.com                              Best Case Bankruptcy

Debtor     BODY DETAILS LLC                                    Case number *(If known)*
           Name

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| **47.** | **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | |
| **48.** | **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | |
| **49.** | **Aircraft and accessories** | | |
| **50.** | **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | |
| 2021 Quantificare LifeViz Infinity Serial #5060348 | $0.00 | Comparable sale | $12,500.00 |
| 2021 Quantificare LifeViz Infinity Serial #6224052 | $0.00 | Comparable sale | $12,500.00 |
| 2021 Quantificare LifeViz Infinity | $0.00 | Comparable sale | $12,500.00 |
| 2021 Juventix CENT8 | $0.00 | Comparable sale | $500.00 |
| 2021 Juventix Biofiller Incubuator MG2020 | $0.00 | Comparable sale | $4,000.00 |
| 2021 Juventix CENT8 Serial #W19200022080980 | $0.00 | Comparable sale | $500.00 |
| 2021 Juventix CENT8 Serial #W19200021081299 | $0.00 | Comparable sale | $500.00 |
| 2021 Juventix CENT8 Serial #W19200021010245 | $0.00 | Comparable sale | $500.00 |
| 2021 Juventix Biofiller Incubuator MG2020 | $0.00 | Comparable sale | $4,000.00 |
| 2014 Candela GentleMax Pro Serial #9914-9035-1261 | $0.00 | Comparable sale | $60,000.00 |
| 2020 Candela GentleMax Pro Serial #9914-9035-1440 | $0.00 | Comparable sale | $60,000.00 |
| 2014 Candela GentleMax Pro Serial #9914-9035-3039 | $0.00 | Comparable sale | $60,000.00 |
| 2019 Candela GentleMax Pro Serial #9914-9035-9061 | $0.00 | Comparable sale | $60,000.00 |
| 2022 Candela GentleMax Pro Serial #9914-9035-18203 | $0.00 | Comparable sale | $60,000.00 |
| 2022 Candela GentleMax Pro Serial #9914-9035-18869 | $0.00 | Comparable sale | $60,000.00 |

Software Copyright (c) 1996-2024 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor    BODY DETAILS LLC           Case number *(If known)* _____
        Name

| | | | |
|---|---|---|---|
| 2022 Candela GentleMax Pro Serial #9914-9035-18215 | $0.00 | Comparable sale | $60,000.00 |
| 2022 Candela GentleMax Pro Serial #9914-9035-18209 | $0.00 | Comparable sale | $60,000.00 |
| 2022 Candela GentleMax Pro Serial #9914-9035-19620 | $0.00 | Comparable sale | $60,000.00 |
| 2023 Candela GentleMax Pro Serial #9914-9035-20226 | $0.00 | Comparable sale | $60,000.00 |
| 2014 Candela GentleMax Pro Serial #9914-9035-3101 | $0.00 | Comparable sale | $60,000.00 |
| 2014 Candela GentleMax Pro Serial #9914-9035-1259 | $0.00 | Comparable sale | $60,000.00 |
| 2014 Candela GentleMax Pro Serial #9914-9035-3012 | $0.00 | Comparable sale | $60,000.00 |
| 2015 Candela GentleMax Pro Serial #9914-9035-3378 | $0.00 | Comparable sale | $60,000.00 |
| 2015 Candela GentleMax Pro Serial #9914-9035-3548 | $0.00 | Comparable sale | $60,000.00 |
| 2017 Candela   GentleMax Pro Serial #9914-9035-5537 | $0.00 | Comparable sale | $60,000.00 |
| 2018 Candela GentleMax Pro Serial #9914-9035-7789 | $0.00 | Comparable sale | $60,000.00 |
| 2019 Candela GentleMax Pro Serial #9914-9035-9058 | $0.00 | Comparable sale | $60,000.00 |
| 2019 Candela GentleMax Pro Serial #9914-9035-13022 | $0.00 | Comparable sale | $60,000.00 |
| 2022 Candela GentleMax Pro Serial #9914-9035-18862 | $0.00 | Comparable sale | $60,000.00 |
| 2021 Candela GentleMax Pro Serial #9914-9035-15133 | $0.00 | Comparable sale | $60,000.00 |
| 2022 Candela GentleMax Pro Serial #9914-9035-18204 | $0.00 | Comparable sale | $60,000.00 |

Software Copyright (c) 1996-2024 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | BODY DETAILS LLC | | Case number (If known) | |
| --- | --- | --- | --- | --- |
| | Name | | | |

| | | | |
| --- | --- | --- | --- |
| 2022 Candela GentleMax Pro Serial #9914-9035-18207 | $0.00 | Comparable sale | $60,000.00 |
| 2017 Candela PicoWay Serial #9914-9060-3445 | $0.00 | Comparable sale | $90,000.00 |
| 2016 Candela PicoWay Serial #9914-9060-3173 | $0.00 | Comparable sale | $90,000.00 |
| 2017 Candela PicoWay Serial #9914-9060-3608 | $0.00 | Comparable sale | $90,000.00 |
| 2017 Candela PicoWay Serial #9914-9060-3414 | $0.00 | Comparable sale | $90,000.00 |
| 2016 Candela PicoWay Serial #9914-9060-3247 | $0.00 | Comparable sale | $90,000.00 |
| 2019 Candela PicoWay Serial #9914-9060-4640 | $0.00 | Comparable sale | $90,000.00 |
| 2019 Candela PicoWay Serial #9914-9060-4313 | $0.00 | Comparable sale | $90,000.00 |
| 2018 Candela PicoWay Serial #9914-9060-4167 | $0.00 | Comparable sale | $100,000.00 |
| 2019 Candela PicoWay Serial #9914-9060-4399 | $0.00 | Comparable sale | $100,000.00 |
| 2017 Candela PicoWay Serial #9914-9060-3331 | $0.00 | Comparable sale | $100,000.00 |
| 2016 Candela PicoWay Serial #9914-9060-3168 | $0.00 | Comparable sale | $100,000.00 |
| Zimmer Cryo 6 Serial #734828 | $0.00 | Comparable sale | $6,300.00 |
| 2019 Zimmer Cryo 6 Serial #1920006414 | $0.00 | Comparable sale | $6,300.00 |
| Zimmer Cryo 6 Serial #736501 | $0.00 | Comparable sale | $6,300.00 |
| 2021 Zimmer Cryo 6 Serial #2120003346 | $0.00 | Comparable sale | $6,300.00 |
| Zimmer Cryo 6 Serial #735483 | $0.00 | Comparable sale | $6,300.00 |
| Zimmer Cryo 6 Serial #736534 | $0.00 | Comparable sale | $6,300.00 |
| Zimmer Cryo 6 Serial #736535 | $0.00 | Comparable sale | $6,300.00 |
| 2018 Zimmer Cryo 6 Serial #1820013145 | $0.00 | Comparable sale | $6,300.00 |
| 2018 Zimmer Cryo 6 Serial #1820011638 | $0.00 | Comparable sale | $6,300.00 |

Official Form 206A/B      Schedule A/B Assets - Real and Personal Property      page 8

| Debtor | BODY DETAILS LLC | | Case number *(If known)* | |
|--------|------------------|-|--------------------------|-|
| | Name | | | |

| | | | |
|---|---|---|---|
| 2017 Zimmer Cryo 6 Serial #1720005415 | $0.00 | Comparable sale | $6,300.00 |
| Zimmer Cryo 6 Serial #736496 | $0.00 | Comparable sale | $6,300.00 |
| 2024 White Label Zimmer | $0.00 | Comparable sale | $6,300.00 |
| 2023 BD Sculpt Serial #FE800EMB23091508 | $0.00 | Comparable sale | $5,000.00 |
| 2024 BD Sculpt | $0.00 | Comparable sale | $5,000.00 |
| 2024 White Label Hydrafacial Serial #HY022S0976 | $0.00 | Comparable sale | $5,000.00 |
| 2024 White Label Hydrafacial Serial #HY022S0974 | $0.00 | Comparable sale | $5,000.00 |
| 2024 White Label Hydrafacial Serial #HY022S0997 | $0.00 | Comparable sale | $5,000.00 |
| 2024 White Label Hydrafacial Serial #HY022S0978 | $0.00 | Comparable sale | $5,000.00 |
| 2024 White Label Hydrafacial Serial #HY022S0977 | $0.00 | Comparable sale | $5,000.00 |
| 2024 White Label Hydrafacial Serial #HY022S0976 | $0.00 | Comparable sale | $5,000.00 |
| 2024 White Label Hydrafacial Serial #HY022S0973 | $0.00 | Comparable sale | $5,000.00 |
| 2024 White Label Hydrafacial Serial #HY022S1277 | $0.00 | Comparable sale | $5,000.00 |
| 2024 White Label Hydrafacial Serial #HY022S0928 | $0.00 | Comparable sale | $5,000.00 |
| 2023 White Label Hydrafacial Serial #HY022S0794 | $0.00 | Comparable sale | $5,000.00 |
| 2021 Quantificare LifeViz Infinity Serial #6248281 | $0.00 | Comparable sale | $12,500.00 |
| 2021 Juventix CENT8 | $0.00 | Comparable sale | $500.00 |
| 2021 Juventix CENT8 Serial #W19200021010249 | $0.00 | Comparable sale | $500.00 |

Debtor    BODY DETAILS LLC                                    Case number *(If known)*
          Name

| Description | Net book value | Valuation method | Current value |
|---|---|---|---|
| 2021 Juventix Biofiller Incubabator MG2020 Serial #24350621090190 | $0.00 | Comparable sale | $4,000.00 |
| 2021 Juventix CENT8 Serial #W19200021010230 | $0.00 | Comparable sale | $500.00 |
| 2021 Juventix CENT8 Serial #W19200021081309 | $0.00 | Comparable sale | $500.00 |
| 2021 Juventix CENT8 Serial #W19200021010233 | $0.00 | Comparable sale | $500.00 |
| 2021 Juventix Biofiller Incubabator MG2020Serial #24350621110314 | $0.00 | Comparable sale | $4,000.00 |
| 2021 Juventix CENT8 Serial #W19200021070905 | $0.00 | Comparable sale | $500.00 |
| 2021 Juventix Biofiller Incubabator MG2020 Serial #24350621110315 | $0.00 | Comparable sale | $4,000.00 |

51.    **Total of Part 8.**                                                          | $2,620,600.00 |

       Add lines 47 through 50.   Copy the total to line 87.

52.    **Is a depreciation schedule available for any of the property listed in Part 8?**
       ☒ No
       ☐ Yes

53.    **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
       ☒ No
       ☐ Yes

**Part 9:     Real property**

54. **Does the debtor own or lease any real property?**

    ☒ No.   Go to Part 10.
    ☐ Yes Fill in the information below.

**Part 10:     Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

    ☐ No.   Go to Part 11.
    ☒ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60.    **Patents, copyrights, trademarks, and trade secrets** Trademark Reg. No. 3,579,008 | $0.00 | Debtor's Opinion | $0.00 |
| Trademark Reg. No. 5,442,518 | $0.00 | | $0.00 |
| Trademark Reg. No. 5,412,063 | $0.00 | | $0.00 |
| Trademark Reg. No. 3,594,012 | $0.00 | | $0.00 |

Software Copyright (c) 1996-2024 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor    BODY DETAILS LLC
          _____     Case number *(If known)* _____
          Name

          Trademark Reg. No. 5,442,519 _____        $0.00   _____        $0.00

| | | | |
|---|---|---|---|

61.    **Internet domain names and websites**
       https://www.bodydetails.com/ _____        $0.00   _____        $0.00

62.    **Licenses, franchises, and royalties**

63.    **Customer lists, mailing lists, or other compilations**

64.    **Other intangibles, or intellectual property**

65.    **Goodwill**

66.    **Total of Part 10.**

       Add lines 60 through 65. Copy the total to line 89.            $0.00

67.    **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107**?**
       ☒ No
       ☐ Yes

68.    **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
       ☒ No
       ☐ Yes

69.    **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
       ☒ No
       ☐ Yes

**Part 11:    All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
    Include all interests in executory contracts and unexpired leases not previously reported on this form.

    ☒ No.   Go to Part 12.
    ☐ Yes Fill in the information below.

Debtor  BODY DETAILS LLC_____  Case number *(If known)* _____
   Name

| Part 12: | Summary |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $27,494.09 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $1,086,910.38 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $226,379.87 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $4,794,384.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $2,620,600.00 | |
| 88. **Real property.** *Copy line 56, Part 9* ...............................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $8,755,768.34 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $8,755,768.34 |

Software Copyright (c) 1996-2024 Best Case, LLC - www.bestcase.com                                                            Best Case Bankruptcy

# BODY DETAIL LLC - 6 MONTH BUDGET - EXHIBIT "H"

Based on 5 Locations

| | August | September | October | November | December | January |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| **Total A. Service Revenue** | 300,000.00 | 350,000.00 | 350,000.00 | 400,000.00 | 350,000.00 | 400,000.00 |
| **Total Income** | 300,000.00 | 350,000.00 | 350,000.00 | 400,000.00 | 350,000.00 | 400,000.00 |
| **Cost of Goods Sold** | | | | | | |
| **Fulfillment Services** | 258.00 | 258.00 | 258.00 | 258.00 | 258.00 | 258.00 |
| **Merchant Fees** | 24,780.00 | 27,623.00 | 27,623.00 | 31,569.00 | 27,623.00 | 31,569.00 |
| **Total Cost of Goods Sold** | 25,038.00 | 27,881.00 | 27,881.00 | 31,827.00 | 27,881.00 | 31,827.00 |
| | | | | | | |
| **Balance Sheet Items** | | | | | | |
| - AR Payments | 73,300.00 | 73,300.00 | 73,300.00 | 73,300.00 | 73,300.00 | 73,300.00 |
| | | | | | | |
| **Gross Income** | 348,262.00 | 395,419.00 | 395,419.00 | 441,473.00 | 395,419.00 | 441,473.00 |
| | | | | | | |
| **Expenses** | | | | | | |
| - Facility Expense | | | | | | |
| **Bad Debt Expense** | 5,324.00 | 5,324.00 | 5,324.00 | 5,324.00 | 5,324.00 | 5,324.00 |
| **Facility Licenses and Taxes** | 2,041.00 | 1,691.00 | 1,691.00 | 1,691.00 | 1,691.00 | 1,691.00 |
| **Facility Payroll Expenses** | 157,390.00 | 67,346.00 | 67,346.00 | 67,346.00 | 67,346.00 | 72,487.00 |
| **Facility Rent** | 65,200.00 | 40,155.00 | 40,155.00 | 40,155.00 | 40,155.00 | 40,155.00 |
| **Facility Supplies** | 5,688.00 | 3,547.00 | 3,547.00 | 3,547.00 | 3,547.00 | 3,547.00 |
| **Facility Utilities** | 4,585.00 | 3,089.00 | 3,089.00 | 3,089.00 | 3,089.00 | 3,089.00 |
| **Medical Director (Outside Contractor)** | 6,808.00 | 1,923.00 | 1,923.00 | 1,923.00 | 1,923.00 | 1,923.00 |
| **Laser Safety Officer (Outside Contractor)** | 2,308.00 | 962.00 | 962.00 | 962.00 | 962.00 | 962.00 |
| **Uniforms** | - | - | - | - | - | - |
| **Total Facility Expense** | 249,344.00 | 124,037.00 | 124,037.00 | 124,037.00 | 124,037.00 | 129,178.00 |
| | | | | | | |
| - Overhead Expense | | | | | | |
| **Advertising Expense** | 64,235.00 | 64,235.00 | 64,235.00 | 64,235.00 | 64,235.00 | 64,235.00 |
| **Consulting and Professional Fees** | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 | 1,350.00 |
| **Corporate Bank Fees** | 105.00 | 105.00 | 105.00 | 105.00 | 105.00 | 105.00 |
| **Corporate Dues and Subscriptions** | 11,338.00 | 11,338.00 | 11,338.00 | 11,338.00 | 11,338.00 | 11,338.00 |
| **Corporate Insurance Expense** | 13,066.00 | 13,066.00 | 13,066.00 | 13,066.00 | 13,066.00 | 13,066.00 |
| **Corporate Licenses and Taxes** | 1,744.00 | 1,744.00 | 1,744.00 | 1,744.00 | 1,744.00 | 1,744.00 |
| **Corporate Payroll Expenses** | 160,843.00 | 91,876.00 | 74,433.00 | 59,817.00 | 59,817.00 | 59,817.00 |
| **Corporate Payroll Taxes** | 12,398.00 | 6,140.00 | 6,004.00 | 6,004.00 | 6,004.00 | 6,004.00 |
| **Officer Payroll Expenses** | 34,615.00 | 23,077.00 | 23,077.00 | 23,077.00 | 23,077.00 | 23,077.00 |
| **Officer Payroll Taxes** | 2,648.00 | 1,765.00 | 1,765.00 | 1,765.00 | 1,765.00 | 1,765.00 |
| **Corporate Telephone Expense** | 3,111.00 | 3,111.00 | 3,111.00 | 3,111.00 | 3,111.00 | 3,111.00 |
| **Cryogen** | 4,681.00 | 4,681.00 | 4,681.00 | 4,681.00 | 4,681.00 | 3,745.00 |
| **Total Overhead Expense** | 310,134.00 | 222,488.00 | 204,909.00 | 190,293.00 | 190,293.00 | 189,357.00 |
| | | | | | | |
| **Total Expenses** | 559,478.00 | 346,525.00 | 328,946.00 | 314,330.00 | 314,330.00 | 318,535.00 |
| **Net Operating Income** | -211,216.00 | 48,894.00 | 66,473.00 | 127,143.00 | 81,089.00 | 122,938.00 |
| | | | | | | |
| **Secured Creditor Payments** | | | | | | |
| - Balboa - Adequate Protection Payments | 1,762.98 | 1,762.98 | 1,762.98 | 1,762.98 | 1,762.98 | 1,762.98 |
| - US Small Business Administration (no AP) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| - Truist Bank (no AP) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | |
| **Other Expenses** | | | | | | |

| | | | | | |
|---|---:|---:|---:|---:|---:|
| **- Equipment Repairs** | 0.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| **- Quarterly U.S. Trustee Fee** | 250.00 | 0.00 | 0.00 | 500.00 | 0.00 | 0.00 |
| **- Stripe Financing (Merchant fees)** | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| **Total Balance Sheet Items** | 22,012.98 | 41,762.98 | 41,762.98 | 42,262.98 | 41,762.98 | 41,762.98 |
| | | | | | |
| **Net Estimated Cash Flow** | -233,228.98 | 7,131.02 | 24,710.02 | 84,880.02 | 39,326.02 | 81,175.02 |

**EXHIBIT "I"**

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:

BODY DETAILS LLC, f/k/a                          Case No. 24-17571-MAM
  BODY DETAILS LLLP,                          Chapter 11

      Debtor-in-Possession,

_____/

**INTERIM ORDER GRANTING**
**EMERGENCY MOTION FOR AUTHORIZATION TO ENTER**
**INTO POST-PETITION FINANCING WITH TCP BODY SPACE LLC**

    THIS MATTER came before the Court for hearing on _____, 2024 at _____.m.,

upon the Debtor's *Emergency Motion for Authorization to Enter into Post-Petition Financing with*

*TCP Body Space LLC and Request for Emergency Hearing* (DE XX) (the "Motion").  The Court,

having reviewed the Motion, and for the reasons stated on record, finds that good cause exists to

grant the Motion on an interim basis.

    **IT IS THEREFORE ORDERED:**

1.      The Motion (DE XX) is **GRANTED ON AN INTERIM BASIS.**

2.      The Debtor is authorized to enter into post-petition financing with TCP Body Space, LLC ("TCP") on an interim basis (the "DIP Facility") pending a final hearing.

3.      The DIP Facility is **APPROVED** on an interim basis on the terms described in the Motion and as set forth in the term sheet attached to the Motion.

4.      TCP will receive an 11 U.S.C. § 364(c)(1) super-priority administrative expense claim—that has priority over all other administrative expense and priority claims specified in 11 U.S.C. §§ 503(b) and 507(b)—for amounts due under the DIP Facility, and, pursuant to 11 U.S.C. § 364(d), all amounts due under the DIP Facility are deemed secured by a fully-perfected first-position lien on all assets of the Debtor and the Debtor's estate except for assets constituting causes of action under chapter 5 of the United States Bankruptcy Code. Any amounts loaned through the DIP Facility will accrue interest at _____% per annum.

5.      The terms of the DIP Facility are fair and reasonable, reflect the Debtor's good faith and proper exercise of prudent business judgment consistent with its fiduciary duties and are in the best interests of the Debtor and its estate, and such agreements and terms thereof constitute reasonably equivalent value and fair consideration.

6.      The Debtor is authorized to execute any and all loan documentation consistent with the terms of the DIP Facility, including a promissory note, and shall file a copy with the Court upon execution of same. However, the absence of any Promissory Note or other loan documents shall in no way impair the validity, enforceability, or effectiveness of the DIP Facility and the protections granted to BGM herein and under 11 U.S.C. §§ 364(c)(1) and 364(d).

7.      The Debtor shall be entitled to use the DIP Facility to pay all ordinary and necessary expenses in the ordinary course of its business for the purposes contained in, and consistent with,

the budget attached to this Interim Order as Exhibit "A" (the "Budget"). The Debtor is also authorized to: (a) to exceed any line item on the Budget by an amount equal to ten (10%) percent of each such line item; or (b) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

8.      Notwithstanding the provisions of section 552(a) of the Bankruptcy Code, and in addition to the security interests preserved by § 552(b) of the Bankruptcy Code, the Debtor grants in favor of TCP, as security for all pre-petition indebtedness that is owed by the Debtor to the same, but only to the extent that each entity's cash collateral is used by the Debtor, post-petition security interests and liens in, to and against any and all personal property assets of the Debtor, to the same extent and priority that each such entity held a properly perfected pre-petition security interest in such assets; provided that, however, under no circumstances shall TCP have a lien on any causes of action arising under 11 U.S.C. § 542 *et seq.*, 544, 547, 548, 549, 550, 551, or any of the Debtor's assets that it did not have a right to pre-petition.

9.      The terms and provisions of this Interim Order shall be immediately effective upon entry of this Interim Order. The terms of this Interim Order shall be valid and binding on the Debtor, TCP, the Debtor's creditors, any statutory committee appointed in this case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this case or in any subsequent chapter 7 case.

10.      This Court will hold a ***FINAL HEARING*** on the Motion on _____, 2024 at _____ .m.

11.      The hearing will be conducted at the ***United States Courthouse, 1515 North Flagler Drive, Courtroom A, West Palm Beach FL 33401.***

12.     Although the Court will conduct the hearing in person, any interested party may choose to attend the hearing remotely using the services of Zoom Video Communications, Inc. ("Zoom"), which permits remote participation by video or telephone.  To participate in the hearing remotely via Zoom (whether by video or telephone), you must register in advance no later than 3:00 p.m., one business day before the date of the hearing.  To register, click on or enter the following registration link in a browser:

*https://www.zoomgov.com/meeting/register/vJItdumqrzstGdoBW4nz6tq3IJmn8ydPxj4*

13.     Any objections to the Motion must be filed no later than two (2) days before the scheduled Final Hearing.

# # #

Submitted by:

Chad Van Horn, Esq.
Florida Bar No. 64500
**VAN HORN LAW GROUP, P.A.**
500 N.E. 4th Street, Suite 200
Fort Lauderdale, FL 33301
Telephone: (954) 765-3166
Facsimile: (954) 756-7103
Email: chad@cvhlawgroup.com

*Chad Van Horn, Esq. is directed to provide a copy of this signed Order to all parties of record and to file a Certificate of Service conforming with Local Rule 2002-1(F).*